# BLYTHE *v.* HINCKLEY.

## APPEAL FROM THE CIRCUIT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA.

No. 367. Submitted January 30, 1899. — Decided April 3, 1899.

It appearing from the opinion of the Circuit Judge that the various bills in this case were dismissed on the grounds : (1) That the jurisdiction of the Circuit Court could not be maintained because the state court, in the exercise of its general jurisdiction, determined the eligibility of the defendant Florence Blythe to inherit an estate which that court was called upon to distribute under the laws of the State, and that other propositions contended for by the complainants were for the same reason deemed insufficient to take this case out of the general rule that after a court of a State, with full jurisdiction over property in its possession, has finally determined all rights to that property, a court of the United States will not entertain jurisdiction to annul such decree and disturb rights once definitely determined ; and (2) That the remedy of complainants, if any, was at law, and not in equity. *Held,* As neither ground went to the jurisdiction of the Circuit Court as a court of the United States, the appeal could not be sustained as within any class mentioned in § 5 of the Judiciary Act of 1891 ; and, if error was committed this was not the proper mode for correcting it.

THIS was a "complaint to quiet title," brought in accordance with the Code of Civil Procedure of California by John W. Blythe and Henry T. Blythe, citizens of the States of Kentucky and Arkansas, respectively, against Florence Blythe Hinckley, Frederick W. Hinckley and the Blythe Company, all citizens of California, which alleged that complainants were owners as tenants in common of the real property described therein, and that the defendants, "and each of them, claim that they have or own adversely to plaintiffs some estate, title or interest in said lands; but plaintiffs allege that said claims of defendants are false and groundless and without warrant of law, and their claims to said lands are a cloud upon plaintiffs' title thereto." Then followed an amended complaint, which repeated the allegations of the original complaint, with some other averments, among them, "that at the

time of the commencement of this suit neither one of the parties was in possession of said lands nor any part thereof." Thereafter a "second amended and supplemental bill in equity" was filed, which, among other things, set forth that Thomas H. Blythe was the owner of the real estate described at the time of his death; that he died in the city and county of San Francisco, April 4, 1883, being a citizen of the United States, and of the State of California, and a resident of said city and county; and that "after the death of said Thomas H. Blythe, as hereinbefore alleged, the public administrator of the city and county of San Francisco took charge of the estate of said Blythe and entered upon the administration of the same;" that Florence Blythe Hinckley was born in England, the child of an unmarried woman; that the mother was a British subject; that Florence remained in England until after the death of Thomas H. Blythe, when and in 1883, she came to California, being then an infant ten years old, and "ineligible to become a citizen of the United States;" and that she was "when she arrived in California a non-resident alien."

It was then averred that the laws in force in California in 1883 relating to the rights of foreigners and aliens to take real estate by succession as heirs at law of a deceased citizen of the State of California, were the treaty of 1794 between His Britannic Majesty and the United States, the naturalization laws of the United States, and section seventeen of article one of the constitution of California of 1879, which was made mandatory and prohibitory by section twenty-two; that there were at the death of Blythe certain laws in force in said State, to wit, sections 230 and 1387 of the Civil Code, providing for the adoption and legitimation, and institution of heirship, of illegitimate children; that there was not at any time during Blythe's lifetime any law in force in England under or by force of which he could have legitimated the said Florence or made her his heir at law, or under which he could have absolved the said Florence from allegiance to her sovereign, or, without bringing said Florence into California, have changed her status from a subject of England to that of a *bona fide* resident of California.

It was further alleged that on a direct proceeding in the Superior Court of San Francisco, sitting in probate, brought on behalf of said Florence to determine the question of heirship, and to which action and proceeding complainants appeared, denying and contesting her application, that court adjudged in favor of Florence, and "decided, in substance and effect, that said Thomas H. Blythe had in his lifetime adopted and legitimated the said Florence;" that from that decree complainants appealed to the Supreme Court of the State, and that court "in substance and effect, decided that said Thomas H. Blythe did not adopt or legitimate the said Florence under or in conformity with said section 230 of the Civil Code, but that he had constituted her his heir under and pursuant to the provisions of section 1387 of said Civil Code." And it was charged that neither the Superior Court nor the Supreme Court had jurisdiction to render judgment in the matter, and that the decision of the Supreme Court was in violation of the constitution of the State of California, and inconsistent with numerous former decisions of that court.

The bill then set forth that said Florence filed in the Superior Court in the matter of the estate of Thomas H. Blythe a petition for distribution, to which complainants appeared, and the court on hearing granted a decree of partial distribution, which complainants charged was void for want of jurisdiction; that thereafter and after the marriage of said Florence to defendant Hinckley, she filed in the Superior Court her petition for final distribution of the estate, which was resisted by complainants, but the court entered thereon a decree of final distribution, which complainants charged was void for want of jurisdiction.

It was further stated that when the original bill was filed neither party was in possession of the land described, but that the same was in the possession of the public administrator of said city and county of San Francisco, and that since then Florence had secured and was now in possession of the property. The bill prayed for a decree quieting complainants' alleged title; for an accounting as to rents and profits; for a receiver; and for general relief.

After the filing of the second amended and supplemental bill, Mrs. Hinckley moved to dismiss the suit for want of jurisdiction, which motion was sustained by the Circuit Judge, for reasons given in an opinion filed December 6, 1897. 84 Fed. Rep. 246.

After the court ordered the dismissal of the suit, the record shows that leave was given to complainants "to amend their bill upon the understanding that it would not necessitate any further argument, but should be subject to the prior motion to dismiss the second amended and supplemental bill and to the order for a final decree entered thereon." Accordingly on December 22, 1897, complainants filed their "third amended and supplemental bill in equity." This bill was substantially the same as that immediately preceding, though it set up reasons why an action at law would not be an adequate remedy, and amplified certain matters alleged to bear on the jurisdiction of the state courts. It averred that section 671 of the Civil Code of California, providing that "any person, whether citizen or alien, may take, hold and dispose of property, real or personal, within this State;" and section 672, providing: "If a non-resident alien takes by succession, he must appear and claim the property within five years from the time of succession, or be barred;" were void as to aliens, because encroachments upon the treaty making power of the United States, and in conflict with section ten of article one of the Constitution of the United States, and with section 1978 of the Revised Statutes, and that therefore those courts were without jurisdiction; and also that when the state courts adjudged in favor of Florence because of Blythe's action under section 1387 of the Code, reading "every illegitimate child is an heir of any person who, in writing, signed in the presence of a competent witness, acknowledges himself to be the father of such child," that section was made to operate in favor of Florence outside of the geographical jurisdiction and boundaries of California, and, as thus applied, was in violation of section ten, article one, of the Federal Constitution, and of section 1978 of the Revised Statutes, and an invasion of the jurisdiction of international intercourse, wherefore the adjudication was without

jurisdiction; and complainants further said that sections 671, 672 and 1387 of the Code were in conflict with treaties between the United States and Russia, France, Switzerland and England, and with the Constitution of the United States; and hence that the Circuit Court had jurisdiction "on the ground that the construction and application of the Federal Constitution are involved as well as on the ground of diverse citizenship of the parties, and because said section of said Civil Code violated the Federal Constitution as herein stated." On the same day, December 22, 1897, the final decree was entered in the case, the third paragraph of which was as follows: "That the original 'complaint' of the complainants, John W. Blythe and Henry T. Blythe, filed December 3, 1895, and also the 'amended complaint' of said complainants, filed December 12, 1895, and also the 'second amended and supplemental bill in equity' of said complainants, filed January 14, 1897, and also the complainants' third amended and supplemental bill, filed by leave of court this 22d day of December, 1897, after the rendition of the decision of the court upon the matters determined herein, but before the signing of this decree, be, and the same are each hereby, finally dismissed as against each and all of the parties named therein respectively as defendants, and in all respects and in every particular, for want of either Federal or equity jurisdiction and without prejudice to complainants' right to bring or maintain an action at law."

From this decree John W. Blythe and Henry T. Blythe prayed an appeal to this court, which was allowed and bond given March 2, 1898, and on the same day the Circuit Judge filed a certificate, certifying "to the Supreme Court of the United States pursuant to the Judiciary Act of March 3, 1891," fifteen questions of law, which it was stated arose "upon the face of said third amended and supplemental bill and upon said motion," namely, the motion to dismiss.

The first ten of these questions set forth that the Circuit Court sustained the motion to dismiss for want of jurisdiction to entertain the suit, and ordered it to be dismissed accordingly. The remaining five contained no statement as to their disposition.

It appears from the opinion of the Circuit Judge that the various bills were dismissed on the grounds: First, that the jurisdiction of the Circuit Court could not " be maintained because the state court, in the exercise of its general jurisdiction, determined the eligibility of the defendant Florence to inherit an estate which that court was called upon to distribute under the laws of the State;" and that " the other propositions contended for by complainants are for the same reason deemed insufficient to take this case out of the general rule that after a court of a State, with full jurisdiction over property in its possession, has finally determined all rights to that property, a court of the United States will not entertain jurisdiction to annul such decree and disturb rights once definitely determined."

Second, that the remedy of complainants, if any, was at law, and not in equity.

A motion was made to dismiss or affirm the appeal.

*Mr. Frederic D. McKenney, Mr. W. H. H. Hart, Mr. John Garber* and *Mr. Robert Y. Hayne* for the motion.

*Mr. S. W. Holladay, Mr. E. B. Holladay, Mr. Jefferson Chandler* and *Mr. L. D. McKisick* opposing.

Mr. Chief Justice Fuller, after stating the case, delivered the opinion of the court.

We have heretofore determined that review by certificate is limited by the act of March 3, 1891, to certificates by the Circuit Courts, made after final judgment, of a question in issue as to their own jurisdiction; and to certificates by the Circuit Courts of Appeal of questions of law in relation to which the advice of this court is sought. *United States* v. *Rider,* 163 U. S. 132.

Appeals or writs of error may be taken directly from the Circuit Courts to this court in cases in which the jurisdiction of those courts is in issue, that is, their jurisdiction as Federal courts, the question alone of jurisdiction being certified to this

court. The Circuit Court held that the remedy was at law and not in equity. That conclusion was not a decision that the Circuit Court had no jurisdiction as a court of the United States. *Smith* v. *McKay*, 161 U. S. 355; *Blythe Company* v. *Blythe*, 172 U. S. 644.

The Circuit Court dismissed the bills on another ground, namely, that the judgments of the state courts could not be reviewed by that court on the reasons put forward. This, also, was not in itself a decision of want of jurisdiction because the Circuit Court was a Federal court, but a decision that the Circuit Court was unable to grant relief because of the judgments rendered by those other courts.

If we were to take jurisdiction on this certificate, we could only determine whether the Circuit Court had jurisdiction as a court of the United States, and as the decree rested on no denial of its jurisdiction as such, but was rendered in the exercise of that jurisdiction, it is obvious that this appeal cannot be maintained in that aspect.

Nor can we take jurisdiction on the ground that the case involved the construction or application of the Constitution of the United States, or that the validity or construction of a treaty was drawn in question, or that the constitution or law of a State was claimed to be in contravention of the Constitution of the United States, within the meaning of the Judiciary Act of March 3, 1891.

The Circuit Court by its decree passed on none of these matters, unless it might be said that they were indirectly involved in holding the judgments of the state courts to be a bar; and, moreover, the decree rested on the independent ground that the remedy was at law.

Even if the decree had been based solely on the binding force of the state judgments, still we cannot hold that an appeal directly to this court would lie.

The Superior Court of San Francisco was a court of general jurisdiction, and authorized to take original jurisdiction "of all matters of probate," and the bill averred that Thomas H. Blythe died a resident of the city and county of San Francisco and left an estate therein; and that court repeatedly decreed

that Florence was the heir of Thomas H. Blythe, and its decrees were repeatedly affirmed by the Supreme Court of the State. So far as the construction of the state statutes and state constitution in this behalf by the state courts was concerned, it was not the province of the Circuit Court to reëxamine their conclusions. As to the question of the capacity of an alien to inherit, that was necessarily involved in the determination by the decrees that Florence did inherit, and that judgment covered the various objections in respect of section 1978 of the Revised Statutes, and the tenth section of article one of the Constitution of the United States, and any treaty relating to the subject.

We are not to be understood as intimating in the least degree that the provisions of the California Code amounted to an invasion of the treaty-making power, or were in conflict with the Constitution or laws of the United States, or any treaty with the United States; but it is enough for the present purpose that the state courts had concurrent jurisdiction with the Circuit Courts of the United States, to pass on the Federal questions thus intimated, for the Constitution, laws and treaties of the United States are as much a part of the laws of every State as its own local laws and constitution, and if the state courts erred in judgment, it was mere error, and not to be corrected through the medium of bills such as those under consideration.

*Appeal dismissed.*