Robert **BATEMAN**, Charles Davis, Jr., Raymond Major, Theodore Pinckney, Theodore Wilson, Sr., Middleton Houston, and Samuel Green, in their individual capacity, as Officers and Members of Local 1422–A, International Longshoremen's Association, AFL–CIO, an unincorporated association, and as members of a class representing employees of the South Carolina State Ports Authority, Plaintiffs,

v.

The **SOUTH CAROLINA STATE PORTS AUTHORITY**, a body corporate and politic, and Capers G. Barr, Jr., individually and as General Manager, Defendants.

Civ. A. No. 69–217.

United States District Court
D. South Carolina,
Charleston Division.

April 17, 1969.

Arthur G. Howe, Coming B. Gibbs, Jr., of Gibson, Gibbs & Krawcheck, Charleston, S. C., and Gleason & Miller, New York City, for plaintiffs.

William H. Grimball, Charleston, S. C., Everett Brandon, Asst. Atty. Gen. for the State of South Carolina, and Ellison D. Smith, Jr., Columbia, S. C., for defendants.

## ORDER

HEMPHILL, District Judge.

Plaintiffs seek adjudication, in this forum, of (1) a class action allegedly instituted to protect constitutional prerogatives, using the Civil Rights Act of 1871 [1] as a vehicle, and (2) money damages in the amount of $2,000,000 plus attorneys' fees and costs. Collateral, but claimed as vital, are requests for equitable relief specified as:

(A) An Order of Injunction directing the Defendents to cease discriminating against members of the said class because of membership in a labor organization, and because of union activity.

(B) An Order of Injunction compelling the Defendants to rehire all employees discharged because of membership in a labor organization or union activity.

(C) An Order of Injunction compelling the Defendants to cease and desist from discharging employees be-

---

1. 42 U.S.C. § 1983. Civil Action for Deprivation of Rights.

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Consitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

cause of membership in a labor organization or union activity.

(D) An Order of Injunction directing the Defendants to discontinue the action brought in the Court of Common Pleas for Charleston County, State of South Carolina.

At the threshold this court finds that an action has previously been pitched in the Court of Common Pleas of Charleston County, South Carolina, involving essentially the same parties.[2] To be resolved here is a question of whether the same *issues* can or will be settled by that court in that case. Generally, the complaint there charged defendants with conspiring, *striking* [emphasis added] and picketing against the Ports Authority facilities and efforts in and about its terminal at Charleston, thus disrupting the shipment and handling of freight and commerce through the Port of Charleston. Specifically asking for injunctive relief, the Ports Authority there alleged the continuation of such conduct by those named defendants "will bring to a substantial halt waterborne commerce through said port, thus defeating the very purposes for which the plaintiff [Ports Authority] was created."

After a hearing the State Judge issued an order:

This cause came before me today on the Plaintiff's sworn complaint and the affidavit of Capers G. Barr, Jr., General Manager, of the Plaintiff, and the Court having considered these pleadings, and it appearing that a temporary restraining order should be granted, now, therefore, on motion of

Messrs. Smith & Smith and Grimball & Cabaniss, Attorneys for the Plaintiff.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the Defendants, and each of them, their agents, servants, employees, and those acting under the direction and control and in conjunction with them, are hereby enjoined and restrained, until further order of this Court, from striking and/or picketing any and all of the facilities of the Plaintiff located in the City and in the County of Charleston, State of South Carolina, and from otherwise interfering with the conduct of the Plaintiff's work and business; further ORDERED that the Sheriff of Charleston County forthwith serve upon each of the Defendants hereinabove named copies of this temporary restraining order and of the summons and complaint and affidavit upon which the said temporary restraining order has been applied for and granted.

 The thrust of plaintiff's pursuit has exciting overtones. In effect they are seeking by judicial decree that relief specifically denied (by omission rather than commission) by the legislative branch of government(s), State and national. The apparent ambition is to have this forum allow plaintiff, astride a steed known as civil rights, to jump the present barriers which confine labor-management areas (and at the same time exclude). Material to this consideration are the obvious that:

(1) Strikes by Federal employees against the Federal Government are forbidden by United States statute.[3]

2. This action is entitled: SOUTH CAROLINA STATE PORTS AUTHORITY, A body corporate and politic, Plaintiff vs. INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, AFL-CIO, And LOCAL 1422-A of the INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, AFL-CIO, Its Officers, Members and Employees And ROBERT BATEMAN, individually and as President and/or Business Agent of LOCAL 1422-A of the INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, AFL-

CIO, PETER WASHINGTON, RAYMOND MAJOR, GEORGE FARMER, EDWARD GRANT, HERMAN BENNETT, THOMAS R. JENKINS, and BOBBY T. GIBSON, Defendants.

3. 18 U.S.C.A. § 1918 provides: Disloyalty and asserting the right to strike against the Government.

Whoever violates the provision of section 7311 of title 5 that an individual may not accept or hold a position in the Government of the United States or the

(2) Employers which are governmental subdivisions do not have to bargain.[4]

(3) The South Carolina State Ports Authority, under the statute creating it has the right to hire and fire without giving a reason.[5]

(4) The Norris-LaGuardia Act does not apply [6] to a situation in which employees seek to enjoin an employer.

(5) There exists, under state law, no legislative vehicle (statute) which disciplines employer-employee-union relations in cases of this or similar nature.

The chronology of events culminating in this action is as follows: Prior to March 3, 1969, all of the members of the class which plaintiffs represent were employees of the South Carolina State Ports Authority. On March 3, 1969, these plaintiffs failed to report for work and picketed the site of their employment. The same day the State Ports Authority moved for, and the Court of Common Pleas for Charleston County, S. C., granted, a temporary injunction prohibiting the plaintiffs from striking or picketing. Thereafter on March 5 and 6, the State Ports Authority advertised for new employees and as a result of its advertisement 166 new employees were hired. On Monday, March 10, 1969, some 200 former employees re-

turned to their jobs. On Friday, March 14th, the employment of some 85 of the persons who failed to report to work on March 3rd was terminated by the State Ports Authority. Plaintiffs contend that these employees were released because of their union activities; defendants contend that they were released because they were not needed.

The State Ports Authority as plaintiff in the State litigation contended there that the union had no right to strike and apparently this was the basis for the Court of Common Pleas' decision to issue a temporary injunction. The union has filed an answer in State court; therein the union's right to strike has been raised and it is before that court. Plaintiffs in this court (the union) contend that the Ports Authority and Barr have discriminated and will continue to discriminate (by firing them) against union members on account of their union activity. If the union lacked or lacks the right to strike it could be argued that union members were fired for "cause". Thus, the question of whether the union had a constitutionally protected right to strike would have to be decided by this court were it to take immediate jurisdiction. The imminent question is whether defendants have violated plaintiffs' constitutional rights [7] by

government of the District of Columbia if he—
\* \* \* \* \*
(3) participates in a strike, or asserts the right to strike, against the Government of the United States or the government of the District of Columbia; or
(4) is a member of an organization of employees of the Government of the United States or of individuals employed by the government of the District of Columbia that he knows asserts the right to strike against the Government of the United States or the government of the District of Columbia;
shall be fined not more than $1,000 or imprisoned not more than one year and a day, or both.

4. 29 U.S.C.A. § 152(2) removes governmental subdivisions from the requirements of the Fair Labor Standards Act:
(2) The term "employer" includes any person acting as an agent of an employer,

directly or indirectly, but shall not include the United States or any wholly owned Government corporation, or any Federal Reserve Bank, or any State or political subdivision thereof, or any corporation or association operating a hospital, if no part of the net earnings inures to the benefit of any private shareholder or individual, or any person subject to the Railway Labor Act, as amended from time to time, or any labor organization (other than when acting as an employer), or anyone acting in the capacity of officer or agent of such labor organization.

5. 54–14 Code of Laws of South Carolina, 1962.

6. 29 U.S.C. §§ 101–115.

7. Plaintiffs make no distinction between civil rights and constitutional rights.

firing union members. It is apparent that this question is entwined with the question of the union's right to strike. The first question is before the State court and the second could easily be raised there and in fact may have to be raised there. Therefore, all the issues can be litigated in State court.

Plaintiff says that he has a separate suit against Capers G. Barr, Jr. Barr, on April 8, 1969, was made a party to the State action. Again, plaintiff has a forum for relief, the State forum.

■■ The first question with which this court faces is that of jurisdiction. Plaintiffs allege a right to form a union grounded in the First Amendment and applied to the states through the Fourteenth. The First Amendment rights of "freedom of association," free speech, and freedom of assembly include and protect the right to join a union.[8] Plaintiffs insist that defendants have interferred with their rights by its alleged discriminatory firing of union members. This presents a federal question of constitutional proportions. Because of the federal question involved, this court would have jurisdiction.[9]

Moreover, plaintiffs proceed in this court under Title 42 U.S.C.A. Section 1983[10] and Title 28 U.S.C.A. Section 1343[11]. Those sections specifically provide for federal jurisdiction in those cases where parties seek protection of civil rights as constitutional rights. Plaintiffs pitch their cause for equitable relief on the exercise of authority by defendants "under color of law," that is, the statutory authority of the Ports Authority as an arm of the State of South Carolina and the official acts of Barr as Manager.

■ Jurisdiction established, the issue arises is this a proper occasion for abstention? Abstention is a court-made doctrine which was first enunciated in the case of Railroad Commission of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971. The doctrine is invoked with a purpose to minimize conflicts inherent in the federal system and as an aid to orderly litigation. This court believes that the case at bar presents a proper climate for the application of the doctrine of abstention.

Plaintiffs earnestly contend against abstention. In support of their contention they rely heavily upon the case of McNeese v. Board of Education, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622. There plaintiffs sued under 42 U.S.C.A. section 1983 seeking to integrate a school district, alleging denial of rights guaranteed by the Fourteenth Amendment. Defendant Board urged the district court to abstain from exercising jurisdiction because plaintiffs had not exhausted administrative remedies provided under local law. The Supreme Court held that the district court should not have abstained from exercising jurisdiction.

■■ *McNeese* is distinguishable from the instant case upon two grounds. First, in the *McNeese* case there were no proceedings pending before a State court or administrative agency when suit was brought. In the case presently before this court, there is litigation in progress before a State court involving the same parties and substantially the same issues. The question of whether the union had a right to "strike" is before the State court. The question of whether the plaintiffs have been discriminated against (fired) on account of their

---

8. Atkins v. City of Charlotte (W.D.N.C. Charlotte Division), 296 F.Supp. 1068, decided February 25, 1969.

9. 28 U.S.C.A. § 1331.

10. Supra.

11. 28 U.S.C. § 1343(4) provides: Civil rights and elective franchise.

The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

\* \* \* \* \*

(4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote.

union membership rather than for cause could be raised and decided in that litigation. Second, *McNeese* was primarily concerned with the exhaustion of administrative remedies. Moreover in *McNeese* the court felt that it was uncertain whether the administrative proceedings offered a forum which would protect plaintiffs' constitutional rights. In the present case judicial, rather than administrative, proceedings are involved. The State courts have concurrent jurisdiction with the Federal courts to protect constitutionally guaranteed rights.[12] Therefore, the judicial proceeding available through the State courts are adequate to protect plaintiffs' constitutional rights.

The civil rights statutes under which the plaintiffs are before this court are grants of equity jurisdiction, and a court vested with equitable jurisdiction may in its sound discretion refuse to assume jurisdiction of a matter when the interests of justice would thereby be furthered.[13] Such a grant of equitable jurisdiction is compatable with the doctrine of abstention. Abstention is a tool of discretion and the doctrine should be invoked only when to do so will not prejudice constitutional rights. Since litigation through which plaintiffs' constitutional rights can be vindicated is in progress before the State courts, this is a proper occasion for a discretionary refusal to exercise the jurisdiction conferred upon this court by the civil rights statutes.

Moreover, the admonition embodied in 28 U.S.C.A. Section 2283 [14] supports a discretionary refusal to exercise equity jurisdiction. 28 U.S.C.A. Section 2283 provides that a federal court shall not enjoin State court proceedings except in certain limited cases. The theory underlying 28 U.S.C.A. Section 2283 is that a federal court should respect the integrity of proceedings in State court and should not intervene in State court proceedings except in the most extreme circumstances. This perpetuates the theory (and former practice) that a Federal court is a court of limited jurisdiction, to be exercised cautiously.

The principles of comity and respect for orderly judicial proceedings are relevant to the question of enjoining State court proceedings as well as to the question of whether a Federal court should take jurisdiction of a matter pending in State court.[15] The case of Baines v. City of Danville, 337 F.2d 579, involved a suit under Section 1983 alleging denial of First Amendment rights. This court is guided by the decision in Baines v. City of Danville, supra, where

---

12. 21 C.J.S. Courts § 526, p. 798. Upon the state courts, equally with the courts of the Union, rests the obligation to guard and enforce every right secured by the constitution and laws of the United States whenever those rights are involved in any suit or proceeding before them * * *.

13. Barron & Holtzoff, 837, p. 196. The civil rights statutes create rights which may be protected by federal courts in the exercise of their normal equity jurisdiction. These statutes, however, have not broadened the controlling equitable doctrines, and relief may be denied on well established principles. See also Douglas v. City of Jeannette, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324.

14. 28 U.S.C. § 2283. A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

15. In N.A.A.C.P. v. Gallion, 190 F.Supp. 583, a civil rights suit was brought while there was a case before a State court. The Federal District Court said: "In addition to the above, it must be recognized that there are certain instances when a federal court should not exercise its jurisdiction and this is particularly true where an action is in the breast of a state court and one of the litigants in that case seeks to invoke the injunctive powers of the federal courts. Stefanelli v. Minard, 342 U.S. 117, 72 S.Ct. 118, 96 L.Ed. 138 * * *." See also Douglas v. City of Jeannette, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324.

the Fourth Circuit Court of Appeals said through Judge Haynsworth:

> We have assumed at the outset that § 1983 did authorize an injunction here were it not for the prohibition of § 2283, the anti-injunction statute. Section 1983 does confer a general equity jurisdiction, as we have noted above, but the fact that a comparable statute does the same thing does not mean an exercise of the equity jurisdiction conferred by § 1983 is not subject to the limited restriction of § 2283.

> \* \* \* \* \* \*

> Though we hold that § 2283, except when the United States is a party, applied to an attempt to enjoin then pending proceedings in a state court, is at least as broad as the judicially developed principle of comity which forbids federal interference with state court proceedings, it is not a jurisdictional statute. It is a limitation upon the exercise by a District Court of its equity jurisdiction. It was born of the realization of the problems which would arise if the Courts of the United States undertook to interfere with proceedings in state courts. It was fathered by the same principles of comity exemplified by Douglas v. City of Jeannette, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324. Since the statute was fathered by the principles of comity, it has been held that the statute should be read in the light of those principles and, though absolute in its terms, is inapplicable in extraordinary cases in which an injunction against state court proceedings is the only means of avoiding grave and irreparable injury. In our view, the congressional command ought to be ignored only in the face of the most compelling reasons, but we have certainly been told by the Supreme Court that in those circumstances it may be disregarded, for its parentage discloses that it was not intended to be as absolute as it sounds.

The circumstances here are not so compelling as to warrant the use of the federal injunctive power. Since this is not a proper occasion to enjoin State court proceedings, if litigation were allowed in this court, there would merely be a race to judgment. The doctrine of abstention is properly invoked to promote orderly judicial proceedings.

 It is this court's view that a suit with the same parties and substantially the same issue is now pending before a State court. The State courts have concurrent jurisdiction to enforce rights granted by the United States Constitution. All the issues can be litigated there and if plaintiffs' constitutional rights have been violated, they can be vindicated in State court. Plaintiffs therefore have a forum in which their rights can be protected. The Court of Common Pleas of Charleston County has jurisdiction to protect plaintiffs' constitutional rights; that court has the duty to protect plaintiffs' constitutional rights; it has the integrity to protect plaintiffs' constitutional rights. This court therefore believes that the orderly administration of justice would be promoted by its refusal to exercise jurisdiction over the matters in controversy and that this case offers a proper occasion for the application of the doctrine of abstention.

Therefore this court withholds exercise of authority or proceeding to decision on those matters which, as stated herein, are or can be at issue in the State court. Plaintiffs' suit is not dismissed, but this court will abstain until such time as the State court has acted.

This does not close the doors of this forum. In the event of a failure to gain consideration in the matter pending, this court would ever be open. But this is not an invitation to proceed in the light of an adverse decision.

Abstention will be observed. Jurisdiction is retained.

And it is so ordered.