TEAMSTERS LOCAL UNION NO. 822
OF NORFOLK, VIRGINIA, et
al., Plaintiffs,

v.

CITY OF PORTSMOUTH, VIRGINIA, a
Municipal ·Corporation, et al.,
Defendants.

Civ. A. No. 75–184–N.

United States District Court,
E. D. Virginia,
Norfolk Division.

Aug. 11, 1975.

Norman Olitsky, Portsmouth, Va., for plaintiffs.

Gordon B. Tayloe, Jr., City Atty., Portsmouth, Va., for defendants.

## MEMORANDUM ORDER

KELLAM, Chief Judge.

Asserting a deprivation of their rights under the First and Fourteenth Amendments, plaintiffs instituted this action pursuant to 42 U.S.C., § 1983. The first count of the complaint alleges the City of Portsmouth, a municipal corporation, and the city manager, chief of police, and city councilmen of said city, refuse to recognize Teamsters Local Union No. 822 of Norfolk, Virginia (Union) as the representative of the members of the Police Department of the city, and refuse to negotiate with said union. The second count of the complaint asserts that the city, by receiving funds from the federal government pursuant to the Law Enforcement Assistance Act, 42 U.S.C., §§ 3701–3795, has become an instrumentality of the federal government and, as such, the individual plaintiffs are entitled to the benefits of the Executive Order of the President known as Executive Order 11491, relating to recognition of labor unions and the right to collective bargaining.

Plaintiffs seek declaratory and injunctive relief, damages, costs and attorney's fees.

Defendants have filed a motion for summary judgment to which they attached affidavits. Each side has submitted briefs in support of their positions, but plaintiffs have not countered the allegations of the affidavits.

While the individual plaintiffs assert they are being deterred and prevented from associating with organizations of their own choice without fear of penalty or reprisal, and from organizing, and they are denied their rights of free speech pursuant to the First Amendment, the affidavits of the city manager and chief of police, which are not controverted, set forth that plaintiffs and all employees of the Police Department are free to join, associate or not associate with labor organizations of their own choosing;

that no penalty or reprisal has resulted from any actions of members of the Police Department joining any labor organization; and that the city does not recognize any labor organization as a representative of the police.

 City is not a person as defined in 42 U.S.C., § 1983. *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); *Moor v. County of Alameda*, 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973); *City of Kenosha v. Bruno*, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973). Secondly, the city manager, chief of police and members of the council are sued in their official capacities and as such not liable in damages to the plaintiffs under § 1983. *Scheuer v. Rhodes*, 416 U.S. 232, 238, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Moye v. City of Raleigh*, 503 F.2d 631, 635 n. 11 (4th Cir. 1974); *Bowman v. White*, 388 F.2d 756 (4th Cir. 1968). But if the allegations of the complaint are sufficient to cover the city manager, chief of police and councilmen in their individual capacities, they enjoy a qualified immunity, "the variations being dependent upon the scope of discretion and responsibility of the office and all the circumstances as they reasonably appeared at the time of the action on which liability is sought to be based." "It is the existence of reasonable grounds for the belief formed at the time and in light of all the circumstances, coupled with good-faith belief, that affords a basis for qualified immunity of executive officers for acts performed in the course of official conduct." *Scheuer v. Rhodes, supra* [416 U.S. 247–8, 94 S.Ct. 1692]. In *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214, dealing with immunity of school board members, the court said the member is not immune from damages if "he knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [student] affected, or if he took the action with malicious intention to cause a deprivation of constitutional rights or other injury." The above quotation was followed with the language—

"That is not to say that school board members are 'charged with predicting the future course of constitutional law.' *Pierson v. Ray, supra,* 386 U.S. [547] at 557 [87 S.Ct. 1213, at 1219, 18 L.Ed.2d 288]. A compensatory award will be appropriate only if the school board member has acted with such an impermissible motivation or with such disregard of the student's clearly established constitutional rights that his action cannot reasonably be characterized as being in good faith."

■ There is suggestion the city council is a legislative body and was acting as such when it dealt with the matters in issue; and if so, the council enjoyed complete immunity for the acts in issue. The court further said in *Scheuer v. Rhodes, supra,* 416 U.S. at pages 243–4, 94 S.Ct. at page 1690, that it "had previously recognized that the Civil Rights Act of 1871 does not create civil liability for legislative acts by legislators 'in a field where legislators traditionally have power to act.' *Tenney v. Brandhove,* 341 U.S. 367, 379 [71 S.Ct. 783, 789, 95 L.Ed. 1019] (1951)."

The defendants assert they acted in "good faith" [1] reliance upon opinions of the Attorney General of the Commonwealth of Virginia, and the City Attorney of the City of Portsmouth advising that the council is without authority to recognize labor organizations as representatives of public employees. There is no allegation or suggestion in the complaint or elsewhere that defendants knew or should have known that the action which they took within the sphere of their responsibility would violate the constitutional rights of plaintiffs, or that they acted with such disregard of plaintiffs' clearly established constitutional rights as to suggest their action was not in good faith, or that there were not reasonable grounds for the belief formed from the facts and circumstances that they were acting in good faith. *See Wood v. Strickland, supra; Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18

L.Ed.2d 288 (1967); *Moye v. Raleigh,* 503 F.2d 631 (4th Cir. 1974); *Skinner v. Spellman,* 480 F.2d 539, 540 (4th Cir. 1973); *Eslinger v. Thomas,* 476 F.2d 225 (4th Cir. 1973); *Hill v. Rowland,* 474 F.2d 1374 (4th Cir. 1973); *Bennett v. Gravelle,* 323 F.Supp. 203 (D.Md.1971), aff'd 451 F.2d 1011, petition for cert. dismissed 407 U.S. 917, 92 S.Ct. 2451, 32 L.Ed.2d 692; *Kirstein v. Rector and Visitors of University of Virginia,* 309 F.Supp. 184, 189 (E.D.Va., Three-Judge Court 1970).

Congress in enacting the Labor Management Relations Act, set forth in 29 U.S.C., § 151, declared it to be the policy of the United States to eliminate obstructions to the free flow of commerce by encouraging the practice and procedure of collective bargaining and to protect the exercise by workers of full freedom of association and designation of representatives of their own choosing for the negotiation of terms and conditions of their employment. Section 157 of the same act provided employees should have the right to self-organize, join labor organizations, to bargain through representatives of their choosing, and the right to refrain from such activities. Section 152(2) provides that "employer" shall not include "the United States * * * or any State or political subdivision thereof." That the City of Portsmouth is not an employer and is a political subdivision of the state cannot be questioned. *See NLRB v. Natural Gas Utility District,* 402 U.S. 600, 604, 91 S.Ct. 1746, 1749, 29 L.Ed.2d 206 (1971), where the court said "that Congress enacted the § 2(2) exemption to except from Board cognizance the labor relations of federal, state, and municipal governments, since governmental employees did not usually enjoy the right to strike." Hence, employers which are governmental subdivisions, such as municipalities, do not have to bargain with labor union representatives. In *Government and Civic Employees Organizing Committee, etc. v. Windsor,* 116 F.Supp. 354 (D.C.Ala., Three-Judge

---

1. Mere assertion does not establish good faith, but here there are no allegations or circumstances which would establish otherwise.

Court), affirmed 347 U.S. 901, 74 S.Ct. 429, 98 L.Ed. 1061, dealing with issues similar to the issues in the case at bar, the court said at page 357:

"As to employees working for the State, there can hardly be any dispute that the settlement of grievances, labor disputes, wages, rates of pay, hours of employment, and conditions of work are matters for the State government to be performed through its legislative and executive departments, and are not matters for collective bargaining to be participated in by a labor union or labor organization."

*See also NLRB v. Randolph Electric, etc.,* 343 F.2d 60 (4th Cir. 1965); *International Longshoremen's Association, etc. v. Georgia Ports Authority,* 217 Ga. 712, 124 S.E.2d 733, cert. denied 370 U.S. 922, 82 S.Ct. 1561, 8 L.Ed.2d 503; *Bateman v. South Carolina State Ports Authority,* 298 F.Supp. 999 (D.S.C., 1969); *Local Division 589, etc. v. Amalgamated Transit Union, etc.,* 295 F.Supp. 630 (D.Mass.1969); *State v. Brotherhood of R.R. Trainmen,* 37 Cal.2d 412, 232 P.2d 857, cert. denied 342 U.S. 876, 72 S.Ct. 166, 96 L.Ed. 658.

The legislature of Virginia has the right to and has determined not to recognize union representation of public employees. Such determination is not in conflict with the Act of Congress. In the absence of legislation a local government has no authority to recognize a labor organization as representative of city employees. It is not a matter of constitutional right, but legislative.

Lastly, plaintiffs say that because the city may be receiving funds pursuant to an Act of Congress, it becomes an instrumentality of the federal government. Such a contention is wholly without merit. But even if such is the case, it would not change the outcome of the issues here, as the United States is exempt by 29 U.S.C., § 152, and the Presidential Proclamation is not sufficiently broad to cover the City of Portsmouth.

There is no suggestion that public employees may not organize, join labor unions, or participate in the lawful activities of the union, but such does not carry with it the right to strike or to bargain with a municipal government.

If there is any contention by the plaintiffs that they are prohibited, restricted or deterred from joining any lawful organization, association or union, or that they are threatened with imposition of sanctions, discharge, or any other detrimental actions because of such membership, or they are deterred in the exercise of their First Amendment rights, they are granted a period of twenty (20) days from this date within which to file an amended complaint setting forth such contentions, and to set out any other claims which they may have, coming within the jurisdiction of this court.

The motion for summary judgment is, therefore, GRANTED, with the right of plaintiffs to amend if they be so advised.